**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SHAWN HILL,**

      **Plaintiff,**                                 Case No. 2:20-cv-3983
                                                     JUDGE MICHAEL H. WATSON
      v.                                                 Magistrate Judge Norah McCann King

**KILOLO KIJAKAZI,[1]**
**Acting Commissioner of Social Security,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the Commissioner's denial of Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. For the reasons that follow, the Undersigned recommends that the Commissioner's decision be affirmed.

**I.    PROCEDURAL HISTORY**

      Plaintiff filed his application for benefits on January 18, 2017.[2] R. 220–26. The application was denied initially and on reconsideration, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). On May 30, 2019, Plaintiff, who was represented by counsel, testified at an administrative hearing, as did a vocational expert. R. 31–86. In a

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).
[2] Plaintiff originally alleged a disability onset date of August 1, 2014. However, the ALJ determined that the date that most benefitted Plaintiff was August 1, 2015. R. 15. Plaintiff does not challenge that determination.

1

decision dated June 24, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time between the alleged disability onset date and the date of that decision. R. 15–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 5, 2020. R. 1–6.

## II. LEGAL STANDARDS

### A. Standard of Review

When reviewing a case under the Social Security Act, a court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Baker v. Barnhart*, 182 F. App'x 497, 499 (6th Cir. 2006); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step two.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. If the plaintiff's RFC does not permit the performance of his past relevant work, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC and age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on the alleged disability onset date. R. 24. He met the insured status requirements of the Social Security Act through December 31, 2019. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. *Id.*

4

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: atrial fibrillation, obesity, sleep apnea, paroxysmal supraventricular tachycardia with episodes of bradycardia, asthma, status post cerebral vascular accident, and left thumb partial amputation. R. 18. The ALJ also found that Plaintiff's chronic obstructive pulmonary disease, poor vision, treatment for melanoma, and chronic dorsolumbar and cervical strain were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: no climbing ladders, ropes, or scaffolds and limited to occasional other postural movements (i.e. climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling); work must not require greater than occasional exposure to concentrated levels of extreme temperatures, vibrations or hazards, such as unprotected heights or dangerous unshielded moving mechanical parts; work should not require greater than frequent handling with the left non-dominant hand; and work should not require greater than occasional fingering with the left non-dominant hand.

R. 19. The ALJ also found that this RFC did not preclude the performance of Plaintiff's past relevant work as a fire extinguisher repairer. R. 23. However, the ALJ went on to consider, at step five of the sequential evaluation process, whether this RFC would also permit the performance of other work in the national economy.

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs–*i.e.*, 407,650 jobs as a recreation aide, 407,650 jobs as a sales attendant, and 105,026 jobs as a furniture rental clerk–could be performed by an individual with Plaintiff's vocational profile and RFC. R. 24. The ALJ therefore concluded that Plaintiff

was not disabled within the meaning of the Social Security Act from his alleged disability onset date through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at steps two and four, and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff, Shawn M. Hill's Statement of Specific Errors,* ECF No. 11 (hereinafter "*Statement of Errors*"). The Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ correctly applied the governing legal standards and considered the entire record, and because the administrative decision was supported by sufficient explanation and substantial evidence. *Opposition to Plaintiff's Statement of Errors,* ECF No. 12.

## IV. DISCUSSION

### A. Severe Impairment at Step Two

The ALJ did not include arthritis among Plaintiff's severe impairments, nor did the ALJ include arthritis among Plaintiff's non-severe impairments. Plaintiff complains that this failure to recognize and consider Plaintiff's arthritis as a medically determinable impairment warrants remand. *Plaintiff, Shawn M. Hill's Statement of Specific Errors*, ECF No. 11, PageID # 715-17. "Because of this determination (or lack thereof), the ALJ gave no consideration to this impairment and the potential impact that they [sic] would have on her [sic] residual functional capacity." *Id.*, at PageID# 715.

The medical record contains references to "osteoarthritis," R. 334, "[a]rthritis," R. 352, 360, and "[p]rimary generalized (osteo)arthritis," R. 393.[3] Moreover, the consultative examiner, Stephen Nutter, M.D., diagnosed "[d]egenerative arthritis," R. 494, and Plaintiff testified at the administrative hearing that he has arthritis "[a]cross the back of [his] shoulders and in [his] knees," R. 69, although he has not sought treatment for the condition, R. 70. Although the ALJ did not include "arthritis" among Plaintiff's severe and non-severe impairments, she did consider the condition in her consideration of Plaintiff's subjective complaints and function reports. R. 20.

Where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, the ALJ in fact considered all limitations on Plaintiff's ability to engage in work-related activities. In considering Plaintiff's complaint of arthritis, the ALJ observed that Dr. Nutter, the consultative examiner, noted a normal gait that requires no use of an assistive device,

---

[3] Plaintiff also refers to R. 513 as referring to a diagnosis of arthritis. *Plaintiff, Shawn M. Hill's Statement of Specific Errors*, ECF No. 11, PageID# 716. However, R. 513 reflects only a cardiac tracing and makes no mention of a diagnosis of arthritis.

7

a stable station, and no discomfort in the sitting or supine positions. R. 20-21 (citing R. 492). The mere diagnosis of an impairment says nothing, of course, about the functional limitations flowing from that impairment. *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Plaintiff points to no evidence in the record of functional limitations caused by arthritis beyond those included in the RFC as found by the ALJ. Under these circumstances, the Court concludes that Plaintiff's claim in this regard is without merit.

B. RFC at Step Four

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence. *Plaintiff, Shawn M. Hill's Statement of Specific Errors*, ECF No. 11, PageID# 711-14. A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

8

Plaintiff first argues that the ALJ erred in finding that, although Plaintiff "has a history of cerebral vascular accident,… there is no evidence of lingering effects such as hemi-paralysis, difficulty with speech, or loss of vision." R. 22. Plaintiff suffered the first of several cerebral vascular incidents in 2014 and was hospitalized for five days in 2017 after suffering a parietal orbital left thrombus and transient ischemic attack. R. 334. Plaintiff testified at the administrative hearing that he suffered dizziness, chest pains, numbness, loss of vision, and severe headaches for two years after the 2017 stroke and that he continues to experience dizziness, pain on the right side of his head, left-sided numbness, and vision loss for five to 10 minutes at a time, often necessitating hospitalization. R. 59, 62.

In finding that Plaintiff had the RFC for a limited range of light work, however, the ALJ noted Dr. Nutter's normal neurological findings during his consultative examination: normal muscle strength bilaterally in the upper and lower extremities, without evidence of atrophy; well preserved sensory modalities; symmetrical and normal deep tendon reflexes bilaterally; and intact cerebellar function. R. 493-94. The ALJ also referred to the September 2017 office treatment records of Maninder Bedi, M.D., who noted no vision loss ("amaurosis"), numbness, paresthesias, or speech disturbance on neurological examination, R. 518, and to the office treatment records of Renato Delacruz, M.D., dating from October and November 2017, which indicated that, on neurological examination, Plaintiff was alert and oriented, cranial nerves were intact, reflexes were present, there was no sensory loss or weakness, and strength was measured at 5/5. R. 575. It is significant, too, that James E. Volk, an optometrist, indicated in July 2017 that Plaintiff's corrected vision was 20/20 in both eyes, and that Plaintiff had "[n]o disability due to vision." R. 486. In light of these findings, there is substantial support in the record for the

9

ALJ's determination that Plaintiff's cerebral vascular incidents left no lingering effect on his ability to engage in work-related activities.

Plaintiff also complains that the ALJ erred in failing to incorporate limitations relating to Plaintiff's COPD, asthma, and shortness of breath into the RFC found by the ALJ. *Plaintiff, Shawn M. Hill's Statement of Specific Errors*, ECF No. 11, PageID# 713-14. It is true, and the ALJ acknowledged, R. 18, that Plaintiff complained of chronic obstructive pulmonary disease. The ALJ found that the condition was not severe, however, because

> pulmonary function testing conducted as a part of the claimant's consultative examination revealed a FEV1 of 80 percent of predicted and a FEV1/FVC percentage of 79 percent. This testing was considered normal. COPD is not a severe impairment.

R. 18. In fact, however, Dr. Nutter, the consultative examiner to whose pulmonary function study the ALJ referred, interpreted the study as indicating "very mild restrictive" results. R. 504. Plaintiff argues that, although the difference between Dr. Nutter's assessment of "very mild restrictive" results and the ALJ's characterization of the study as "normal" "may or may not be … substantial, … [it] can only be assumed that [the ALJ] relied on her own lay opinion to make that determination." *Plaintiff, Shawn M. Hill's Statement of Specific Errors*, ECF No. 11, PageID# 714. In making this argument, however, Plaintiff overlooks the fact that the state agency reviewing physicians also characterized Dr. Nutter's pulmonary function study as "normal." R. 111, 130. The ALJ did not err in this regard. Moreover, Plaintiff suggests no work-related limitation resulting from his pulmonary condition that was not adequately addressed in the RFC actually found by the ALJ.

10

## IV. CONCLUSION

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be affirmed and that final judgment be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231, etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walter*, 638 F.2d 947 (6th Cir. 1981).

October 29, 2021                 *s/ Norah McCann King*
                                                                Norah McCann King
                                                                 United States Magistrate Judge